UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

TIME WARNER CABLE OF NEW YORK CITY, a division of Time Warner Entertainment Company, L.P.,

Plaintiff,

RIZLER, INC. d/b/a BLAST MARKETING, SCOTT SMITH, CHRISTOPHER SMITH, JOHN DOES 1-10, JANE DOES 1-10, UNIDENTIFIED CORPORATIONS 1-10, and UNIDENTIFIED BUSINESS ENTITIES 1-10,

Defendants.

01 CIV 1077 DDA/FLN

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

PATRICK J. SULLIVAN, Lefkowitz, Louis & Sullivan, L.L.P., and SONYA BRAUNSCHWEIG, Oppenheimer, Wolf & Donnelly, L.L.P., on behalf of the plaintiff.

ANTHONY J. SICILIANO on behalf of the defendants.

---

The above-entitled matter came on for hearing before this Court on October 17, 2002 upon Plaintiff's Motion for Summary Judgment against Rizler, Inc., d/b/a Blast Marketing and Christopher Smith ("the defendants"). The plaintiff's motion is not directed at Scott Smith.[1] Counsel for both parties offered well-articulated arguments. However, for the reasons stated herein, the Court will grant the plaintiff's motion.

## I. BACKGROUND

Time Warner Cable of New York City ("Time Warner") owns and operates cable television systems in New York City. Rizler, Inc., d/b/a Blast Marketing ("Blast"), located in Cannon Falls, Minnesota, was in the business of selling cable television decoding devices to people in the New York City area. Blast was owned and operated by Defendant Christopher Smith ("Chris Smith"). The Building in which Blast operated was owned by Chris Smith's father, Defendant Scott Smith. Time Warner conducted a private investigation of Blast in March 2001, which included surveillance

---

[1] Scott Smith filed a Chapter 7 petition with the United States Bankruptcy Court for the District of Minnesota on January 24, 2002 and claims against him were discharged on May 1, 2002. Therefore, Time Warner's case against Scott Smith will be dismissed as moot.

FILED NOV 20 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 20 2002
DEPUTY CLERK

of the premises. Time Warner thereafter commenced this action against Chris Smith, Scott Smith, and Blast.

Time Warner moved for a Temporary Restraining Order ("TRO") providing for the seizure of Blast's business records and decoders, which motion was granted on June 22, 2001. Subsequently, pursuant to the Order, the United States Marshall seized items from Blast. On June 29, 2001, with the consent of all parties, this Court ordered that the TRO be converted to a preliminary injunction. At his deposition and throughout these proceedings, Chris Smith has asserted his privilege against self-incrimination in response to Time Warner's discovery requests.

## II. DISCUSSION

### A. Summary Judgment Standard

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or are based on undisputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. United States, 817 F.2d 1328, 1331 (8th Cir. 1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. Liberty Lobby, 477 U.S. at 252; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Second, any dispute of material fact must be "genuine". A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Liberty Lobby, 477 U.S. at 252. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of its claim. Celotex, 477 U.S. at 324. Aside from arguing that there is a fact issue as to whether the decoding devices actually worked, the defendants do not set forth their version of the facts in memoranda, affidavits or other exhibits. Accordingly, the Court finds this action is ripe for summary judgment.

**B. Liability**

The plaintiff argues that, as a matter of law, the defendants are liable under Section 553 of the Communications Act for the distribution and sale of pirate decoding devices.[2] See 47 U.S.C. §553. The defendants do not dispute that the distribution and sale of decoder devices is a violation of Section 553, which provides that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. §553 (a)(1). Rather, the defendants argue that there is an issue of material fact "as to whether the devices purportedly sold by the Defendants were capable of decoding or descrambling all or any of the Plaintiff's premium and pay-per-view programming". (Def. Mem. at 3). Specifically, they contend that there is no evidence that the decoding devices sold by the defendants were able to defeat dynamic encryption, which is used by a cable provider to prevent illegal decoding devices from unscrambling its signals.

Even if they are correct that the decoding devices could not defeat dynamic encryption, a fact that Time Warner disputes, the Court finds that the defendants' argument fails as a matter of law. The record suggests that Time Warner did not have dynamic encryption turned on continuously. When it was not turned on, there is no question that the decoding devices successfully unscrambled Time Warner's signals. Combined with the extensive evidence in the record that the defendants engaged in the sale of decoding devices intended to intercept and unscramble Time Warner's signals, and the fact that Chris Smith chose to assert his privilege against self-incrimination in response to almost all questions regarding the facts underlying this case, the Court finds that there is sufficient evidence to establish liability under Section 553. See Intermedia Partners Southeast v. QB Distributors, L.L.C., 999 F. Supp. 1274, 1281 (D. Minn. 1998) (violation of Section 553 established where decoding devices had no legitimate purpose); Fidelity Nat'l Title Ins. Co. of N.Y. v. National Title Resources Corp., 980 F. Supp.1022, 1025 (D. Minn. 1997) (drawing an adverse inference against a party who invokes the Fifth Amendment privilege in a civil proceeding permissible).

---

[2] In its Complaint, Time Warner asserted claims under 47 U.S.C. §605 in addition to 47 U.S.C. §553. Time Warner now indicates that it "has elected to forego its Section 605 claims". (Pl. Mem. at 7, n.4).

C. **Damages**

1. **Statutory Damages**

Time Warner requests an award of statutory damages pursuant to 47 U.S.C. §553(c)(3)(A)(ii) in the amount of $10,000.00, which is the maximum allowed. The defendants state that, in the event that the Court finds that they are liable under Section 553, they "would not object to the award of the statutory maximum of . . . $10,000.00." (Def. Mem. at 6). Accordingly, having found that liability exists under Section 553, the Court will award statutory damages in the amount of $10,000.00.

2. **Enhanced Damages**

Section 553(c)(3)(B) allows the Court to award enhanced damages not to exceed $50,000.00 if the violation was committed willfully and for the purposes of commercial advantage or private financial gain. 47 U.S.C. §553(c)(3)(B); see CSC Holdings, Inc. v. New Infor. Techs., Inc., 148 F. Supp.2d 755, 762 (N.D. Tex. 2001). Time Warner requests the maximum amount of enhanced damages, arguing that the defendants' conduct was both willful and for the purposes of commercial advantage or private gain pursuant to Section 553(c)(3)(B). The defendants argue in response that enhanced damages are punitive in nature and that it is within the Court's discretion whether to impose damages that are designed to punish the defendant rather than compensate the plaintiff.

The Court will first consider whether the defendants' violation of Section 553 was willful. Willfulness requires proof of "a disregard for the governing statute and an indifference to its requirements". Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985). During its investigation, Time Warner discovered a discarded Blast invoice that reads in part:

| | |
|---|---|
| "First Name: | CABLE |
| Last Name: | THEFT |
| Address 1: | ASSHOLE IS A FEDERAL OFFENCE (sic) |
| Address 2: | FEDERAL PRISON |
| City: | MARION |
| State: | IL |
| Zip: | 66666 |
| . . . | |
| Phone: | WARNER CABLE THEFT LINE" |

(Ex. G to Pl. TRO Motion). In addition, Blast promoted its devices by representing on its website

that they were "[b]ulletproof" (capable of defeating a cable companies' anti-cable theft security measures) and "non-addressable" (the cable company cannot communicate with the device). (Ex. B to Pl. TRO Motion); see Continental Cablevision, Inc. v. Poll, 124 F.3d 1044, 1047 (9th Cir. 1997). Blast's website and invoices also contained disclaimers advising customers that it is illegal to receive cable service without paying for it. Contrary to constituting a defense, courts have found that disclaimers actually demonstrate intent to assist in theft of services. See Columbia Cable T.V. Co., Inc. v. McCary, 954 F. Supp. 124, 127 (D. S.C. 1997). Based on this evidence, the Court finds that the defendants' violation was willful.

The Court will next consider whether the purpose of the defendants' violation was private financial gain. Time Warner argues that there is ample evidence of private financial gain, pointing to the fact that Blast received revenues of approximately $385,000.00 during the first six months of 2001. In addition, according to Time Warner, Chris Smith asserted his privilege against self-incrimination in response to deposition questions "regarding his receiving compensation or bonuses from Blast", "whether his car was paid for with funds derived from the sale of decoding devices", whether he sold pirate decoders to obtain illegal profit", "as well as the nature and scope of his and Blast's assets". (Pl. Mem. at 19). The Court agrees that there is sufficient evidence to find private financial gain as a matter of law.

The remaining issue is to determine the appropriate amount of enhanced damages. Other Courts have awarded the maximum amount of $50,000.00 in cases similar to this one. See, e.g., CSC Holdings, Inc., 148 F. Supp.2d at 762 (defendant advertised nationwide and made substantial profits from sale of decoders); Time Warner Cable of New York City v. David Burgess, Civ. No. A-00-CV-789 JN at 6 (W.D. Tex. Aug. 31, 2002) (defendants "were in the business of selling illegal cable decoders over the Internet to customers across the nation"); General Inst. Corp. of Delaware v.Nu-Tek Elec. & Mfg., Inc., 1997 WL 325804 at *3 (E.D. Pa. June 4, 1997) (defendant "made huge sums of money, well knowing that it was--and he was-- repeatedly and brazenly flouting the law in so doing"). In this case, the defendants advertised on the internet, made a substantial profit, and knowingly violated the law. The Court therefore finds that enhanced damages in the maximum amount of $50,000.00 are appropriate.

**3. Attorneys' Fees and Costs**

Time Warner requests attorneys' fees and costs pursuant to 47 U.S.C. §553(c)(2)(C). The defendants do not object to such an award in the event that the Court determines that liability exists under Section 553. Both parties agree that a calculation and award of attorneys' fees and costs must await the conclusion of the case, that the lodestar method of calculation is appropriate, and that the issue should be separately briefed. Therefore, within thirty (30) days of the issuance of this Order, Time Warner may submit a request for fees and costs, and the issue will be briefed and submitted in accordance with local rules.

**4. Permanent Injunction**

Time Warner requests a permanent injunction, pursuant to 47 U.S.C. §553(c)(2)(A), prohibiting the defendants from any further manufacture, modification, possession or sale of pirate decoders and their components. The defendants' primary argument in opposition is that an injunction is unnecessary because Time Warner has offered no evidence to establish that, in the absence of a permanent injunction, the defendants will continue to violate Section 553. The Court may issue a permanent injunction when liability under Section 553 has been established. CSC Holdings, Inc.,148 F. Supp.2d at 763. As in CSC Holdings, Inc., the Court finds that "[t]he fact that [the] defendants obeyed the preliminary injunction does not necessarily mean that they will comply with the law in the absence of such an order". Id. According, a permanent injunction shall issue in the form attached to this order. No additional security shall be necessary.

**5. Destruction of Decoding Devices**

Time Warner requests that the defendants' decoding devices be destroyed because they have no legitimate use or market value. Time Warner also states that it will stipulate to a reduction of the amount of its judgment by an arbitrary figure of $1,000.00 if the devices are destroyed. The defendants object to the destruction of items seized without a hearing to determine the value of the property. Courts have granted requests for the destruction of decoding devices in similar cases because such devices have little or no value in any legitimate marketplace. See CSC Holdings, Inc., 148 F. Supp.2d at 763; Time Warner Entm't/Advance-Newhouse P'ship v. Worldwide Elec., L.C., No. 98-6118-CIV at 3 (S.D. Fla. Oct. 5, 1999); TKR Cable Co. v. Cable City Corp., No. 96-2877

(D. N.J. Apr. 19, 1999). The defendants have presented no evidence that the property has any lawful purpose or any caselaw in support of their position. Therefore, the Court will grant the plaintiff's request to destroy the decoding devices. However, several miscellaneous items were also seized that do not fall within the definition of "decoding devices". Time Warner "asserts no claim against these items" (Pl. Mem. at 7, n.11) and they shall be returned to the defendants.

Accordingly, upon review of the files, motions, and proceedings herein:

**IT IS HEREBY ORDERED** That:

1. The Plaintiff's Motion for Summary Judgment is **GRANTED**, and

2. The Clerk of Court shall enter judgment as follows:

> **IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that the plaintiff have and receive statutory damages in the amount of $10,000.00 pursuant to 47 U.S.C. §553(c)(3)(A) as against the defendants Rizler, Inc.,d/b/a/ Blast Marketing and Christopher Smith;
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the plaintiff have and receive enhanced damages in the amount of $50,000.00 pursuant to 47 U.S.C. §553(c)(3)(B) as against the defendants Rizler, Inc., d/b/a Blast Marketing and Christopher Smith;
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the plaintiff may file an application for an award of costs and attorneys' fees pursuant to 47 U.S.C. §553(c)(2)(C), as against the defendants Rizler, Inc., d/b/a Blast Marketing and Christopher Smith, within thirty (30) days of the date of this Order;
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that a permanent injunction be issued in the form attached to this order pursuant to 47 U.S.C. §553(c)(2)(A);
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the plaintiff is authorized to take possession of and destroy the seized "decoding devices," as that term is defined in the permanent injunction, and a sum of $1,000.00 shall be deducted from the plaintiff's total recoverable amount;
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that pursuant to the discharge of Defendant Scott Smith's debts in bankruptcy, the Plaintiff's claims against Scott Smith are **DISMISSED.**

DATED: November 20, 2002

DONALD D. ALSOP
United Stated District Court Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

TIME WARNER CABLE OF NEW YORK CITY, a division of Time Warner Entertainment Company, L.P.,

Plaintiff,

RIZLER, INC. d/b/a BLAST MARKETING, SCOTT SMITH, CHRISTOPHER SMITH, JOHN DOES 1-10, JANE DOES 1-10, UNIDENTIFIED CORPORATIONS 1-10, and UNIDENTIFIED BUSINESS ENTITIES 1-10,

Defendants.

01 CIV 1077 DDA/FLN

**PERMANENT INJUCTION**

---

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that pursuant to 47 U.S.C. §553 (c)(2)(A) defendants Rizler, Inc. d/b/a Blast Marketing and Christopher Smith, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby permanently enjoined and restrained from the sale, transfer, advertisement (including advertisement on the Internet or other on-line service), movement and/or offer for sale, modification, manufacture, and distribution of cable television decoding devices and related equipment and/or the rendering of any assistance whatsoever in the unauthorized interception of communications services offered over a cable system, including the sale, transfer, advertisement, movement, modification, manufacture, or distribution of cable television decoders, converters (if modified so as to be capable of decoding scrambled cable television transmissions or if connected to other decoding equipment described herein), descramblers, descrambling cubes or "programmers," converter-decoder combination units, integrated circuits, quick boards, smart boards, test kits, chips, E proms and circuit boards.

DATED: November _____, 2002

DONALD D. ALSOP
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*